ALEXANDER HERNAEZ (SBN 201441)
ahernaez@foxrothschild.com
KETUL D. PATEL (SBN 251985)
KDPatel@foxrothschild.com
DANIEL V. KITZES (SBN 305928)
dkitzes@foxrothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 364-5540
Facsimile: (415) 391-4436

*Attorneys for Defendant*
SPACE EXPLORATION TECHNOLOGIES CORP.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARCH ARNEL NAMATAY, an Individual,

Plaintiff,

v.

Space Exploration Technologies Corp. (dba SPACEX), a Texas Corporation; The Larkin Company, a California Corporation; and DOES 1 through 10, inclusive.

Defendants.

Case No. 2:24-cv-10915

*[Removed from Los Angeles Superior Court Case No. 24STCV31670]*

**DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORP.'S NOTICE OF REMOVAL AND REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446**

# TABLE OF CONTENTS

**Page**


STATEMENT OF JURISDICTION .......... 5

TIMELINESS OF REMOVAL .......... 6

DIVERSITY JURISDICTION .......... 6

A. Complete Diversity Exists Between Plaintiff and Defendant .......... 6

B. Defendant SpaceX is Not a Citizen of California .......... 6

C. Larkin Has Not Been Served, Thereby Permitting Removal .......... 10

D. Larkin Is a Sham Defendant .......... 11

E. The Citizenship of "DOE" Defendants Are Disregarded .......... 12

THE JURISDICTIONAL MINIMUM HAS BEEN ESTABLISHED .......... 12

VENUE .......... 15

NOTIFICATION .......... 15

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 230 (1943) .......... 12

*Boon v. Allstate Ins. Co.*, 229 F.Supp.2d 1016 (C.D. Cal. 2002) .......... 6

*Brady v. Mercedes USA, Inc.*, 243 F.Supp.2d 1004 (N.D. Cal. 2002) .......... 15

*Dechow v. Gilead Sciences, Inc.*, 358 F.Supp.3d 1051 (C.D. Cal. 2019) .......... 10

*Dedication & Everlasting Love to Animals, Inc. v. City of El Monte*, 85 Cal. App. 5th 113 (2022) .......... 14

*Farias v. Bexar County Bd. Of Trustees*, 925 F.2d 866 (5th Cir. 1991) .......... 11

*Galt v. JSS Scandanavia*, 142 F.3d 1150 (9th Cir. 1998) .......... 14

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) .......... 7, 10

*Holland-Thielen et al v. Space Exploration Technologies Corp.*, Case No. 2:24-cv-06972-CAS-RAOx .......... 10

*Hong Kong Cont'l Trade Co. Ltd. v. Natural Balance Pet Foods, Inc.*, 2023 WL 2664246 (C.D. Cal. 2023) .......... 11

*Jacob v. Mentor Worldwide, LLC*, 393 F.Supp.3d 912 (2019) .......... 10

*Joel Soileau v. Space Exploration Technologies Corp.*, Case No. 2:24-cv-06397-ODW (Ex) .......... 10

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) .......... 6

*Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416 (9th Cir. 1989) .......... 11

*Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986) .......... 6

*McCabe v. General Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987) .......... 11

*McQueen v. Woodstream Corp.*,
672 F.Supp.2d 84 (2009) ........ 14

*Morris v. Princess Cruises, Inc.*,
236 F.3d 1061 (9th Cir. 2001) ........ 11

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) ........ 12

*Richmond v. Allstate Ins. Co.*,
897 F.Supp.447 (S.D. Cal. 1995) ........ 14

*Sanchez v. Monumental Life Ins. Co.*,
102 F.3d 398 (9th Cir. 1996) ........ 12

*Simmons v. PCR Tech*,
209 F.Supp.2d 1029 (N.D. Cal. 2002) ........ 13, 14, 15

*Triggs v. John Crump Toyota, Inc.*
154 F.3d 1284 (11 Cir. 1988) ........ 11

*White v. J.C. Penney Life Ins. Co.*,
861 F.Supp.25 (S.D. W. Va. 1994) ........ 13

*Wiemers v. Good Samaritan Society*,
212 F.Supp.2d 1042 (2002) ........ 14

**Statutes**

28 U.S.C. § 1332 ........ 5, 12

28 U.S.C. § 1332(a) ........ *passim*

28 U.S.C. § 1332(c) ........ 6, 7

28 U.S.C. § 1332(c)(l) ........ 7

28 U.S.C. § 1332(d)(2)(A) ........ 10

28 U.S.C. § 1391(b)(2) ........ 15

28 U.S.C. § 1441 ........ 5, 6, 12, 16

28 U.S.C. § 1441(b) ........ 5, 12

28 U.S.C. § 1441(b)(2) ........ 10, 11

28 U.S.C. § 1446 ........ 5, 16

28 U.S.C. § 1446(b) ........ 6

28 U.S.C. § 1446(d) ........ 15, 16

Cal. Civil Code § 3294 ........ 15

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant Space Exploration Technologies Corp. ("SpaceX" or "Defendant") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446 This removal is based on the following grounds: (1) there is complete diversity of citizenship between Plaintiff March Arnel Namatay ("Plaintiff"), a citizen of the State of California, on one hand, and Defendant SpaceX, citizen of Texas on the other hand; (2) The Court may disregard the citizenship of Defendant The Larkin Company ("Larkin") because Larkin has not been served and, therefore, has not been joined in the proceedings; (3) the Court may disregard the citizenship of Defendant Larkin because Larkin is a "sham" defendant; (4) the amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in Section 1332(a); and (4) this removal petition is timely filed. In support of SpaceX's removal, SpaceX states as follows:

**STATEMENT OF JURISDICTION**

1. On December 2, 2024, Plaintiff March Arnel Namatay commenced an action in the Superior Court of the State of California, County of Los Angeles entitled MARCH ARNEL NAMATAY v. SPACE EXPLORATION TECHNOLOGIES CORPORATION, a Texas corporation; THE LARKIN COMPANY, a California Corporation; and DOES 1 through 10, inclusive, Case. No. 24STCV31670 ("Complaint").

2. On December 5, 2024, Defendant SpaceX was personally served with a copy of the Summons and the Complaint through its registered agent. (*See* Declaration of Alexander Hernaez in Support of Defendant's Notice of Removal and Removal to Federal Court (Hernaez Decl.), at ¶ 4.)

3. This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed to the Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action in which

the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs. This is also a civil action that is between citizens of different states.

**TIMELINESS OF REMOVAL**

4. This Notice of Removal is filed within thirty (30) days of receipt of the Complaint and within one year of the commencement of the action in compliance with 28 U.S.C. § 1446(b). The Summons and Complaint, and Answer in this Action are attached to Hernaez Decl. at ¶¶ 4, 5, Exhs, 1 & 2.

**DIVERSITY JURISDICTION**

5. SpaceX exercises its rights under 28 U.S.C. § 1441 to remove this case from the Los Angeles County Superior Court. This Complaint may be removed to this Court by SpaceX pursuant to 28 U.S.C. 1441 because there exists complete diversity between the parties and the amount in controversy exceeds the sum or value of $75,000.00.

A. Complete Diversity Exists Between Plaintiff and Defendant

6. "An individual is a citizen of the state in which he is domiciled . . . ." (*Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).) For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. (*Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).) A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. Plaintiff admits that he is a resident of the State of California. (Hernaez Decl., ¶ 4, Ex. 1 (Complaint ¶ 4).) The Complaint does not allege any alternative state citizenship for Plaintiff. Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes.

B. Defendant SpaceX is Not a Citizen of California

7. Pursuant to 28 U.S.C. § 1332(c), for purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been

///

incorporated and of the State where it has its principal place of business." (28 U.S.C. § 1332(c)(l).)

8. As the U.S. Supreme Court clarified in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the phrase "principal place of business" as stated in Section 1332(c)(1) refers to the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center." (*Hertz,* 559 U.S. at 80-81.) Except in unusual circumstances, a corporation's corporate headquarters is its nerve center. (*Id.* at 93-94.)

9. Plaintiff's Complaint admits that Defendant is a "Texas corporation." (Complaint ¶ 7, Hernaez Decl., ¶ 4, Exh. 1 at ¶ 7.) Defendant SpaceX operates with its principal place of business in Texas. (Declaration of Jamin Gallman ("Gallman Decl.") at ¶¶ 2-5, attached hereto Hernaez Decl., at ¶ 6, Exh. 3.) For purposes of determining diversity, a corporation is deemed to be a citizen of both the state of its incorporation and the state where of its principal place of business. (28 U.S.C. § 1332(c)(1).) Therefore, SpaceX is a citizen of Texas.

10. SpaceX is a privately held corporation with its headquarters at its Starbase facility in Brownsville, Texas. (Gallman Decl. at ¶ 2, attached hereto Hernaez Decl., at ¶ 6, Exh. 3.) SpaceX reincorporated in Texas on February 14, 2024. (Gallman Decl. at ¶ 3.) SpaceX officially designated Starbase as its headquarters in July 2024. (Gallman Decl. at ¶ 4.) SpaceX's Employee Handbook identifies Starbase as its headquarters. (Gallman Decl. at ¶ 5.)

11. SpaceX has two primary businesses: (1) its space launch business and (2) its satellite-based communications business, which is known as Starlink. (Gallman Decl. at ¶ 6.) SpaceX's space launch business designs, manufactures, refurbishes, and launches advanced rockets and spacecraft to take customer

///

///

payloads – including satellites, cargo for the International Space Station, astronauts for NASA and its international partners, and other human spaceflight participants – to space. (Gallman Decl. at ¶ 7.)

12. SpaceX's newest launch system, called Starship, is still in development. It is the largest and most powerful rocket ever built, and SpaceX will use it to take humans back to the moon and eventually to develop permanent human outposts on the moon and Mars. NASA has selected Starship as the Human Landing System that will transport the next American astronauts to and from the surface of the Moon as part of the Artemis program. (Gallman Decl. at ¶ 8.)

13. SpaceX's Starlink business uses its constellation of thousands of Starlink satellites in low earth orbit and a global network of ground infrastructure to provide high-quality connectivity, including internet, to millions of customers in over 100 markets around the globe. The commercial success of SpaceX's Starlink business is critical to the company's success. To continue growing Starlink's customer base, SpaceX must continually launch new satellites into the constellation. Starship, with its unprecedented launch capacity and low launch cost, will enable SpaceX to deploy more, and more advanced, Starlink satellites than its currently operational Falcon launch system. Thus, Starship is also critical for SpaceX's Starlink business. (Gallman Decl. at ¶ 9.)

14. Starbase is where SpaceX is developing the Starship launch system. It makes and launches Starship rockets there. The development of Starbase began in the mid-2010's but the pace of the site's growth has picked up significantly in the last few years. Since 2018, SpaceX has acquired significant additional real estate holdings in the area and added industrial scale structures for rocket production, testing, and launch. (Gallman Decl. at ¶ 10.)

15. The two top officers who direct, control, and coordinate the operations of SpaceX are Gwynne Shotwell, who is the President and Chief Operating Officer of SpaceX, and Elon Musk, who is the founder, Chief Executive Officer, Chief

Technology Officer, and Chairman of the Board of Directors of SpaceX. (Gallman Decl. at ¶ 13.)

16. Mr. Musk's primary work location for SpaceX is Starbase. (Gallman Decl. at ¶ 14.) Ms. Shotwell has offices at Starbase and McGregor, Texas. Ms. Shotwell frequently works at Starbase. (Gallman Decl. at ¶ 15.)

17. At SpaceX, aside from the CEO, COO, and CFO, "vice president" is the highest-ranking title. Mark Juncosa is SpaceX's Vice President of Starship; his primary work location is at Starbase. Additional vice presidents have relocated to Starbase as it has become the epicenter of SpaceX. By way of example, Sheila McCorkle, Vice President, Starship Legal and Regulatory, and Bobby Peden, Vice President, Texas Test and Launch, have their primary work locations at Starbase. (Gallman Decl. at ¶ 16.)

18. SpaceX's Director, Human Resources, Jamin Gallman, relocated to Texas in 2023, in large part because SpaceX's highest-level leaders relocated to Texas, and particularly Starbase. (Gallman Decl. at ¶ 17.) Mr. Gallman currently has seven direct reports at Starbase in the Human Resources Department. (Gallman Decl. at ¶ 11.)

19. SpaceX personnel have been actively moving to and working from Starbase since 2023. SpaceX's hiring efforts at Starbase have continued to increase as well. Starbase is SpaceX's fastest-growing facility. It currently employs ten human resources and benefits professionals and ten full-time recruiting employees. Since September 2023, there has been a rapid increase in the demand for more personnel at Starbase and a tremendous interest by candidates or existing SpaceX employees in working at Starbase. (Gallman Decl. at ¶ 18.)

20. Because SpaceX has various facilities in the United States (e.g., in Texas, Florida, Connecticut, Washington state, Washington D.C., and California), the company has roles in human resources, legal, finance, accounting, procurement, real estate, engineering and other departments that are significantly dispersed

throughout these locations. SpaceX employs individuals in all of these roles at Starbase and has done so prior to July 2024. (Gallman Decl. at ¶ 19.)

21. Starbase has been the SpaceX location where most of the company's critical decision-making occurs since before July 2024, and it still is today. (Gallman Decl. at ¶ 20.)

22. SpaceX's "nerve center" and thus, its principal place of business is located in Texas. (*Hertz*, 559 U.S. at 92-93.)

23. This Court, in a matter entitled *Holland-Thielen et al v. Space Exploration Technologies Corp.*, Case No. 2:24-cv-06972-CAS-RAOx, held that SpaceX is a citizen of Texas. (Request for Judicial Notice ("RJN") ¶ 1.) In another U.S. District Court, Central District of California matter, the District Court in *Joel Soileau v. Space Exploration Technologies Corp*., Case No. 2:24-cv-06397-ODW (Ex) denied a plaintiff's motion to remand where the court held "SpaceX sufficiently establishes that the Court possesses diversity subject matter jurisdiction." (RJN ¶ 2 at 4:12-5:5.)

24. This action satisfies diversity requirements because Plaintiff is a citizen of the State of California, and SpaceX is a citizen of Texas. Therefore, the complete diversity requirement of 28 U.S.C. section 1332(a) is satisfied. (28 U.S.C. § 1332(d)(2)(A).)

C. <u>Larkin Has Not Been Served, Thereby Permitting Removal</u>

25. Plaintiff has failed to serve Larkin. Plaintiff alleges that Larkin is a California corporation. However, Section 1442(b)(2) does not bar removal if the forum defendant has not been properly joined and served at the time of the removal. *Jacob v. Mentor Worldwide, LLC,* 393 F.Supp.3d 912, 920-921 (2019); *Dechow v. Gilead Sciences, Inc.,* 358 F.Supp.3d 1051, 1051-1055 (C.D. Cal. 2019) ("The text of § 1441(b)(2) is unambiguous," and "[i]ts plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined *and served*."). "This court has previously concluded that the plain text of

Section 1441(b)(2) permits snap removal… The plain meaning of Section 1441(b)(2) 'precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served.'" *Hong Kong Cont'l Trade Co. Ltd. v. Natural Balance Pet Foods, Inc.,* 2023 WL 2664246, at *3 (C.D. Cal. 2023).

26. SpaceX is the only defendant that has been joined and served in this case at the time of filing of this Notice of Removal. Therefore, complete diversity exists pursuant to 28 U.S.C. section 1332(a).

D. Larkin Is a Sham Defendant

27. The Court may properly disregard a non-diverse defendant if it is determined that the party's joinder is a "sham," such that no possible cause of action can be established against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"); *Farias v. Bexar County Bd. Of Trustees*, 925 F. 2d 866, 871 (5th Cir. 1991); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (joinder of resident defendant was fraudulent where the plaintiff failed to state any cause of action against resident defendant). In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th Cir. 1989).

28. Plaintiff alleges that Larkin is a California corporation. Larkin, however, was fraudulently joined in this action and is a sham defendant whose citizenship should be disregarded for purposes of jurisdiction and removal. *Triggs v. John Crump Toyota, Inc.* 154 F.3d 1284, 1287 (11 Cir. 1988).

29. Larkin is a third-party disability management company. It is a "sham defendant" in this context because Plaintiff cannot maintain any of his claims he has asserted against Larkin under FEHA. Indeed, Plaintiff admits that he was employed

by Defendant SpaceX in the role of Cook 1 in July 2023 and that he was a dedicated employee to SpaceX. Complaint ¶¶ 11-12. He raises seven causes of action against SpaceX, all of which arise out of his former employment with the company. Moreover, Plaintiff does not even attempt to make any factual assertions against Larkin.

E. The Citizenship of "DOE" Defendants Are Disregarded

30. Plaintiff's Complaint also names as defendants "DOES 1 through 10." However, the citizenship of defendants sued under fictitious names must be disregarded for the purposes of determining diversity jurisdiction. (28 U.S.C. § 1441(b); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (holding that the district court was correct in only considering the citizenship of named defendants as provided by 28 U.S.C. § 1441(b).)

31. This Court has jurisdiction over this matter because complete diversity exists between Plaintiff and SpaceX. (28 U.S.C. §§ 1332 and 1441.) Accordingly, this case may be properly removed.

**THE JURISDICTIONAL MINIMUM HAS BEEN ESTABLISHED**

32. The amount in controversy in this action, exclusive of interest and costs, is more than $75,000.00, based on the following:

33. SpaceX denies any and all liability alleged in this action and denies that Plaintiff is entitled to recover any damages whatsoever, including, but not limited to, an award of reasonable attorneys' fees. While SpaceX denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because it is "more likely than not" that the amount in controversy exceeds the jurisdictional minimum. (*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).) In determining whether a complaint meets the amount in controversy threshold of 28 U.S.C. § 1332(a), a court should consider the aggregate value of claims for compensatory and punitive damages. (*Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 230, 240 (1943) (amount in controversy requirement met if plaintiff

"might recover" award for compensatory and punitive damages in excess of amount in controversy requirement); *Simmons v. PCR Tech*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (aggregating claims for compensatory damages, punitive damages, and attorneys' fees in determining amount in controversy).)

34. Plaintiff's failure to specify the amount of damages sought does not deprive this Court of jurisdiction. (*Simmons*, 209 F. Supp. 2d at 1031; *White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) (defendant may remove suit to federal court notwithstanding plaintiff's failure to plead a specific dollar amount in controversy; if rules were otherwise, "any plaintiff could avoid removal simply by declining…to place a specific dollar value upon its claim."). Here, the damages requested by Plaintiff "more likely than not" exceed $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

35. The Complaint asserts the following causes of action: (1) disability discrimination in violation of FEHA; (2) associational disability discrimination in violation of FEHA; (3) failure to accommodate in violation of FEHA; (4) failure to engage in the interactive process in violation of FEHA; (5) failure to prevent discrimination and or retaliation; (6) CFRA interference; and (7) Wrongful Termiantion (sic). Among other non-monetary forms of relief, Plaintiff seeks (1) compensatory economic damages according to proof including losses incurred in seeking substitute employment and loss earnings and other employment benefits; (2) compensatory interest in the amount of losses incurred in earnings, deferred compensation and other employee benefits at the prevailing legal rate; (3) statutory penalties and civil penalties; (4) punitive damages (6) costs incurred by Plaintiff, including reasonable attorneys' fees; and (7) other and further relief as the court may deem proper. (Kitzes Decl., ¶ 4, Ex. 1.)

///

///

///

36. The minimum amount in controversy, exclusive of interests and costs, is more than $75,000, based on the following:

37. If Plaintiff prevails on his discrimination or retaliation claims under the FEHA, he may recover "back pay" from the date of the adverse employment action through the verdict and "front pay" for his future lost earnings. Plaintiff's final base hourly rate was $23.00 per hour. (*See* Gallman Decl. at ¶ 21.).

38. In addition to front pay and back pay, Plaintiff seeks emotional distress damages according to proof. Emotional distress damages may be considered when calculating the amount in controversy, even where not clearly pled in the complaint. *Simmons*, *supra*, 209 F. Supp. 2d at 1034; *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 451 (S.D. Cal. 1995) ("the vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial.") The jurisdictional limits for the Superior Court of the State of California for the County of Los Angeles, where the underlying matter was filed, are an amount in controversy that exceeds $25,000. (*Dedication & Everlasting Love to Animals, Inc. v. City of El Monte*, 85 Cal. App. 5th 113 (2022).)

39. Plaintiff seeks punitive damages according to proof for alleged malicious, fraudulent, oppressive and despicable conduct in conscious disregard of Plaintiff's rights. (Complaint at ¶¶ 40, 50, 60, 73, 82, 91 and 99).

40. Punitive damages may be considered when determining the amount in controversy in a federal diversity jurisdiction matter. (*Wiemers v. Good Samaritan Society*, 212 F. Supp. 2d 1042 (2002); *McQueen v. Woodstream Corp*., 672 F. Supp. 2d 84 (2009).)

41. Plaintiff also seeks reasonable attorneys' fees. In determining whether the amount in controversy exceeds $75,000, this Court may estimate the amount in reasonable attorneys' fees that Plaintiff will incur through trial. (*Galt v. JSS Scandanavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding that attorneys' fees may be considered to determine jurisdictional amounts "if a statute authorizes fees

to a successful litigant."); *see also Brady v. Mercedes USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002). Attorneys' fees tend to be high in employment law cases brought under FEHA. (*Simmons*, *supra*, 209 F. Supp. at 1035 (noting that in the court's experience, attorneys' fees in employment law cases often exceed the damages). Plaintiff's counsel, Neama Rahmani, earned his law degree from Harvard Law School and he was admitted to practice in California in 2002. (Hernaez Decl. at ¶ 7.) As an experienced attorney in Los Angeles, Plaintiff's counsel would likely expend over $75,000 in attorney fees if this case were to proceed to trial and his office was awarded attorneys' fees. Estimating a conservative $500 per hour at 150 hours to trial would yield attorney fees of $75,000.

42. In sum, Plaintiff's prayer for money judgment representing compensatory damages including lost wages, earnings, and other employee benefits; for other special damages; and for general damages (including those for mental pain and anguish and emotional distress), punitive damages (including those pursuant to Civil Code § 3294) and estimated attorney fees make the amount in controversy well over the jurisdictional $75,000.00 minimum threshold.

**VENUE**

43. This action is currently pending in the Superior Court of California in the County of Los Angeles. SpaceX removes this matter to the United States District Court, Central District of California, Western Division, because Plaintiff filed his complaint in the Los Angeles County Superior Court. However, SpaceX reserves the right to transfer this matter to an appropriate venue upon further discovery, pursuant to 28 U.S.C. § 1391(b)(2).

**NOTIFICATION**

44. As required by 28 U.S.C. § 1446(d), SpaceX will provide prompt written notice to Plaintiff, by counsel, of the removal of this action to federal court.

///

///

As required by 28 U.S.C. § 1446(d), SpaceX will file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

**CONCLUSION**

45. For all of the foregoing reasons, this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446.

WHEREFORE, SpaceX prays that this action now pending against it in the Superior Court of the State of California for the County of Los Angeles be removed therefrom to this Court.

Dated: December 18, 2024

Respectfully submitted,

FOX ROTHSCHILD LLP

BY: */s/ Ketul D. Patel*
ALEXANDER HERNAEZ
KETUL D. PATEL
DANIEL V. KITZES
*Attorneys for Defendant*
SPACE EXPLORATION TECHNOLOGIES CORP.